## Case No. 7,442.

### In re JONAS.

[16 N. B. R. (1878) 452.] [1]

District Court, D. California.

HOFFMAN, District Judge. It is not denied by the counsel for the petitioning creditors that attaching creditors have the right to intervene and contest the adjudication where fraud or collusion between the petitioning creditors and the debtor is alleged, or where the former are alleged not to constitute the requisite quorum of creditors, or where the jurisdiction of the court is denied. In re Boston. H. & E. R. Co. [Case No. 1.677]; In re Bergeron [Id. 1,342]; In re Mendelsohn [Id. 9,420]; In re Hatje [Id. 6,215]; In re Jack [Id. 7,119]; In re Derby [Id. 3.815]; Clinton v. Mayo [Id. 2.899]; In re Williams [Id. 17,706]; Fogarty v. Gerrity [Id. 4.895]; In·re Scrafford [Id. 12.557]. It is contended, however, that this right to intervene does not extend to cases where default has been "made to appear pursuant to the order," and where the intervening creditor merely desires to contest the commission by the debtor of the act of bankruptcy alleged. In support of this position the provisions of the forty-second section of the act [of 1867 (14 Stat. 537)], are chiefly relied on. That section provides "that if the facts set forth in the petition are found to be true, or if default be made by the debtor to appear pursuant to the order, upon due proof of service thereof being made, the court shall adjudge the debtor to be a bankrupt," etc. It is insisted that by these provisions "the default

[1] [Reprinted by permission.]

of the debtor to appear, pursuant to the order," is made equivalent to a voluntary petition filed by him, and that the adjudication follows as the necessary consequence. No authority is cited in support of this construction of the act. In some of the cases above referred to the debtor appears to have made default, but that circumstance is not alluded to by either court or counsel. In re Jack; In re Hatje, supra. The right to intervene is placed either on the express provisions of the amendment to section 39 or upon the more general considerations stated by Mr. J. Woodruff in the Case of Boston, H. & E. R. Co. [supra]. These are that a petition in involuntary bankruptcy is not a mere suit inter partes, "but rather partakes of the nature of a suit in rem, in which any actual creditor has a direct interest, and that a party claiming to be a creditor, and who is able to satisfy the court that he is a creditor, and that his purpose is a meritorious, and not a purely officious one, ought to be allowed to intervene and object to the proceeding." In the case of In re Williams [supra], it was claimed, as in this case, that though the attaching creditor may intervene to contest the jurisdiction of the court, he cannot put in issue the act of bankruptcy. But Mr. J. Brown observes: "On the contrary, however, in the case of Brewster v. Shelton, 24 Conn. 140, the attaching creditor was permitted to come in and claim that the proceedings were collusive as to him, precisely what is claimed in this case and In re Mendelsohn [Case No. 9,420]. In the case of In re Jack [Id. 7,119], the attaching creditor was permitted to test the question of merits. No distinction in principle is perceived. The creditor has an interest to protect. "By the adjudication his attachment is ipso facto dissolved, and he has a right to inquire whether an act of bankruptcy has, in fact, been committed, as well as whether the court has jurisdiction to entertain the petition. Underlying all the discussion on this subject is the general principle of law that no man shall be deprived of his property without the opportunity of being heard. An assumption of this kind is at war with our whole system of jurisprudence." In re Williams [Id. 17,706]. It will be observed that though the learned judge alludes to alleged collusion in the proceeding, he places the right to intervene on the broad ground that any creditor who will be directly affected by the proceeding has a right to be heard. Indeed, in almost every case where the debtor admits the commission of an act of bankruptcy, which in fact he has not committed, in order to defeat an attachment, he may be said to be acting in collusion with the petitioning creditor, and such is said to be the fact in the case at bar. In the Case of Jack, above cited, the collusion was of the same nature. The debtor omitted to resist the adjudication on the merits, and intervening judg-

ment creditors were allowed to do so. In the Case of Boston, H. & E. R. Co., above cited, although fraud and collusion were alleged, the decision turned on the fact that proceedings were pending in another district against the debtor, and this a creditor, who had not proved his debt, was allowed to show in abatement of the second proceedings. Nor was the decision placed on the ground that the court had no jurisdiction over the second proceeding, for the direction given to the Connecticut court was to stay the proceedings until the court in Massachusetts "had made some adjudication on the petition pending before it, nor should the proceeding be even then necessarily dismissed. It might be advisable to continue it, to fall back upon if the Massachusetts decree should, for any reason not applicable to the Connecticut proceedings, prove unavailing or erroneous." In this case, also, the debtor appears to have made default.

The foregoing authorities show that the right to intervene is not confined to the cases to which the counsel for the petitioning creditors restricts it—on the contrary, it is placed on the broad ground of the right of a party to be heard in a proceeding by which his interests will be directly affected; and, further, it appears that the collusion alleged in several of the cases was precisely of the kind claimed to exist in the case at bar, viz., the tacit confession by the debtor of an act of bankruptcy, which, in fact, he had not committed. But, independently of the authorities, I should be of the opinion that the terms of the forty-second section do not require the literal construction contended for. Its language is: "If the facts set forth in the petition are found to be true, or if default be made by the debtor to appear pursuant to the order, upon due proof of service thereof being made, the court shall adjudge the debtor to be a bankrupt," etc. The legislature is here prescribing in general terms the proceedings to be had on the return day of the rule to show cause. Of course, if no one appears to contest them, the allegations of the petition are taken pro confesso. But it was not the design of the section to prescribe who should be allowed to appear and oppose the adjudication. By the very letter of the section the bare appearance of the debtor might take the case out of its operation; but it is obvious that he must not only appear, but must deny the allegations of the petition, or must otherwise show cause why he should not be adjudged. The phrase, "If the facts set forth in the petition shall be found to be true," evidently contemplates an investigation, and by the elementary principles of law and justice all persons to be directly affected by its result have the right to be heard. I cannot think that the succeeding clause, which contemplates the default of the debtor, should be construed to take away that right. It is urged that as by a voluntary petition the

debtor could procure an adjudication, notwithstanding the opposition of his creditors, it is no greater hardship upon them to treat his default as equivalent to the filing of a voluntary petition by him. There might be force in the argument if the proceedings were or could be made the equivalents of each other. But they are not so. In voluntary cases, the debtor, to obtain his discharge, must procure the assent of a certain proportion of his creditors in number and value, or his assets must amount to a certain percentage of his debts. In involuntary cases he is entitled to his discharge, irrespective of either of these requirements. In voluntary cases preferences are avoided, if made within four months. In involuntary cases they are valid, unless made within two months. The reasons for this discrimination it is not easy to conjecture. By an apparent oversight the period within which attachments are avoided has been allowed in both classes of cases to remain as originally fixed, viz., four months. It may thus happen in an involuntary case that creditors who have openly, and in the fair prosecution of their legal rights, obtained liens by attachment within four months of the bankruptcy, will be deprived of them by the adjudication and assignment, while other creditors, who have obtained secret preferences more than two months prior to the proceedings, will be protected. The attaching or other creditors may thus have the strongest interest to compel the proceedings to assume the voluntary form, where all will be placed on the same footing, and where the preferred creditor will have no greater protection than the attaching creditor.

In the case at bar the denial to the intervening creditor of the right to contest the commission of the alleged act of bankruptcy would be a peculiar hardship. That act is the procuring by the bankrupt of his property to be taken on legal process by the intervening creditor. The latter is therefore in effect charged with fraudulent collusion and combination with the bankrupt to obtain a preference. If his right to intervene be disallowed, he will practically be convicted of this charge by the mere omission of the bankrupt to appear, and with no opportunity afforded him to deny or disprove it.

On full consideration of the whole matter, I feel compelled to hold that any creditor whose interests are directly affected by the proceedings, has a right to intervene and contest the allegations of the petition with regard to the acts of bankruptcy alleged, notwithstanding that the debtor has failed to appear on the return-day, pursuant to the order. With regard to one of the acts of bankruptcy alleged, no adequate proof is produced. It is claimed that the denial of its commission by the intervention is insufficient. But the general denial is in the form prescribed by the supreme court for the debtor himself, and no reason is perceived why the same form should not be used by the intervening creditor seeking to raise the same issues. The special denial is a little inexact in language, and possibly an exception to it in the nature of a special demurrer might have been sustained. But the objection comes too late after the issue is accepted and a trial had on the merits. Mr. J. Woodruff observes, with respect to a similar intervention: "The proceeding is summary and in a high degree informal, and it should be free from technical embarrassment." I am inclined to think that the objection could at no stage of the cause have been available. The other act of bankruptcy, and which is chiefly relied on, is alleged to have been the procuring by the debtor of his property to be taken on legal process. I do not think it necessary to recapitulate the proofs. I agree with the register in the opinion that the evidence does not disclose any collusion or complicity between the debtor and the attaching creditors, or any knowledge or expectation on the part of the former that the attachment was to be levied. He can in no sense be said to have procured it. The petitioning creditors have therefore failed to establish the act of bankruptcy alleged in the petition. Had it appeared that the debtor advised or even suggested the levy, the case might have been different. "Very slight evidence of an affirmative character of the existence of a desire to prefer one creditor will be sufficient to invalidate the transaction." Wilson v. City Bank, 17 Wall. [84 U. S.] 473. It may seem strange that the mere existence of a desire to prefer, evidenced by a mere suggestion to the creditor to sue or attach, should have such a controlling effect upon the consequences of the proceeding. But such appears to be the law, and it makes no difference whether the question arises in a proceeding, like that in the case last cited, to set aside a levy on execution alleged to have been "procured or suffered" by the debtor, or, as in the case at bar, an inquiry whether the debtor has "procured his property to be taken on legal process," and thereby committed an act of bankruptcy.

The practical effect of the decision which I feel compelled to make is to give to the attaching creditors the whole or the greater part of the assets of the debtor, to the exclusion of the other creditors. The chief object of the act is thus defeated by the inability of the creditors to prove the act of bankruptcy necessary to bring the debtor within its operation. It may be suggested that this anomalous result would have been avoided if the mere fact that the debtor's property has been taken on attachment or execution for a valid debt, and has remained under seizure a prescribed period, had been declared, by the law, an "act of bankruptcy," irrespective of any "desire" or procurement on the part of the debtor. It is not impossible that such may have been the intention

of the framers of the original act when the words "procure or suffer his property to be taken" were adopted; not that, as has been argued, he must be deemed to have "suffered" the seizure because he did not prevent it by going into voluntary bankruptcy, but that he has "suffered" it because, by not paying his debt, he has put it into the power of his creditor to attach his property. By the existing provisions of the act, the arrest and imprisonment of a debtor for a provable debt for more than twenty days is declared to be an act of bankruptcy. No reason is perceived why the seizure and detention of his property for a like period might not be similarly regarded. I also venture to suggest for consideration the inquiry whether there is any good reason for discriminating between liens acquired by attachment and those obtained by judgment and levy on execution. If the creditor is obliged to surrender his lawfully acquired lien in the one case, why not in the other? There seems to be no reason why a lien by attachment for a just debt should be any less respected than a lien by levy after judgment, for the same debt, and as the law now stands opportunities for fraud are afforded. If the creditors attach and the debtor is desirous of suffering one of them to obtain a preference, he has only to delay the other's proceedings by dilatory pleas, or otherwise, until the favored creditor has obtained a judgment and levy on execution. unopposed. He may then go into bankruptcy. The lien of the attaching creditor who has obtained no judgment will be dissolved, while that of the judgment creditor will be respected—unless collusion can be shown—which is always difficult of proof, and which, in fact, may not have existed. If judgment and attachment liens were put on the same footing, the perplexing, uncertain, and often subtle inquiries into the debtor's motives and "desires," whether there has been "collusion" between the parties, and whether the judgment has been obtained by the debtor's instigation or procurement, would be avoided, the rights of the assignee and the creditor would be clearly fixed by law, and the expense of much uncertain and often fruitless litigation would be saved.